IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:  ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI) | CONSOLIDATED UNDER MDL DOCKET NO. 01-875 |
| BARBARA MANN, *Personal Representative of the Estate of Richard Nybeck*, | |
| *Plaintiff*, | CIVIL ACTION |
| v. | NO. 17-4428 |
| A.O. SMITH CORP., *et al.*, | |
| *Defendants*. | |

**Goldberg, J.**                                                                                                              **June 15, 2021**

## MEMORANDUM OPINION

Richard Nybeck originally filed this personal injury action against multiple defendants, asserting claims for alleged harmful, occupational exposure to asbestos and his development of lung cancer. After Nybeck's unfortunate passing in June 2020, Barbara Mann, as the personal representative of Nybeck's estate, ("Plaintiff") was substituted as plaintiff. The allegations against Defendant, Air & Liquid Systems Corporation, as successor by merger to Buffalo Pumps, Inc. ("Buffalo") stem from Nybeck's military service as a boiler technician aboard a Naval ship.

Presently before me is Buffalo's Motion for Summary Judgment on all claims.[1] For the reasons set forth below, I will grant the Motion.

---

[1] Plaintiff's claims against Buffalo are for negligence (Count One), strict liability (Count Two), and breach of warranty (Count Four).

1

I.      STATEMENT OF FACTS

Unless otherwise indicated, the facts presented below are undisputed.[2]

From 1967 through 1969, while serving in the Navy, Nybeck worked as a boiler technician aboard the battleship *USS New Jersey*. (Def.'s SOF at 3.) He worked aboard the ship while it was docked in the Philadelphia Naval Yard and at sea. (Id.) Buffalo supplied pumps that were installed in and assisted the operation of the *USS New Jersey*. (Id.; Pl.'s SOF at 2, Ex. D.)

During his deposition, Nybeck testified that when he was assigned to "stand watch" in the ship's fireroom, he did not perform any hands-on work on the ship's pumps, Buffalo's or otherwise. (Def.'s SOF at 3–4.) Nybeck was unable to recall whether other crew members in his vicinity performed work on any Buffalo pumps. (Id.) Outside of his time standing watch, he testified that any work he personally performed on a Buffalo pump was limited to one potential incident, during which he tightened a packing gland or seal:

> Q. During that time the on the boiler gang, do you ever recall personally performing any work to any of those Buffalo [p]umps?
> A. Well, like I said, I know I – I know I overhauled of the fuel oil service pumps, and I'm positive <u>at one time or another</u> I worked on Buffalo [p]umps somewhere in them [sic] four firerooms. I don't know – I can't specify a particular time.
> Q. But that work could have been limited to tightening a packing gland?
> A. Yes, sir. That's correct.

(Id., Ex. A, Nybeck Dep. at 185:21–186:6 (emphasis added).) Nybeck could not recall if he ever saw an instructional manual for a Buffalo pump while aboard the *USS New Jersey*. (Def.'s SOF

---

[2] Buffalo's Statement of Facts, which will be cited as "Def.'s SOF," were not presented in distinct, numbered paragraphs. (ECF No. 301 at 3.) In response, Plaintiff submitted a Memorandum of Law that contained a section entitled, "Facts," which will be cited as "Pl.'s SOF." (ECF No. 216 at 2.) I will only consider the facts set forth in the parties' briefs that have proper citations to the record. See Fed. R. Civ. P. 56(c)(1)(A); Malik v. Hannah, 799 F. Supp. 2d 355, 358 (D.N.J. 2011) (A party's expression of general disagreement "without identifying the facts disputed and without [citing] to evidence in the record that raises an issue of fact regarding that point, is insufficient to survive summary judgment.").

at 3–4.) Nybeck was also asked more generally about the work he performed on the valves affixed to the Buffalo pumps:

> Q. Can you provide any testimony to any specifics of any work you performed on a Buffalo [p]ump on the [USS] New Jersey?
> A. Well, I – I know I worked on some of the valves on them. I know that, but I can't say it was this particular group.

(Id., Ex. A, Nybeck Dep. at 186:9–14.)

Nybeck was diagnosed with lung cancer in November 2016 and passed away on June 17, 2020. (ECF No. 331.)

## II.   STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could return a verdict for the non-moving party, and a factual dispute is "material" if it might affect the outcome of the case under governing law. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the non-moving party. Galena v. Leone, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. Schaar v. Lehigh Valley Health Servs., Inc., 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 461 (3d Cir. 1989)).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the

moving party's initial Celotex burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." Id. at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A).

## III. DISCUSSION

Buffalo seeks summary judgment on Plaintiff's claims of negligence, strict liability, and breach of warranty. Buffalo contends that all of Plaintiff's claims fail because his evidence is insufficient to establish that Nybeck was exposed to any Buffalo product allegedly containing asbestos, let alone to the extent to which such exposure could be considered a substantial factor in causing Nybeck's lung cancer. Buffalo also argues that it is also entitled to the government contractor defense on all claims. Plaintiff responds that questions of fact preclude summary judgment.

With regard to the applicable law, Buffalo asserts that maritime law applies. Plaintiff responds that Pennsylvania law applies.[3] When a federal court is sitting in diversity, the choice of law rules of the forum state—in this case, Pennsylvania—apply. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Pennsylvania applies a "flexible rule which permits analysis of the policies and interests underlying the particular issue before the court" and directs courts to

---

[3] Plaintiff did not brief the choice of law issue and first introduced this argument during oral argument on the present Motion.

apply the law of the state with the "most interest in the problem."  Hammersmith v. TIG Ins. Co., 480 F.3d 220, 227 (3d Cir. 2007) (quoting Griffith v. United Air Lines, Inc., 203 A.2d 796, 805–06 (Pa. 1964)).

Here, the alleged asbestos exposure occurred exclusively while Nybeck was working aboard a Naval ship while at sea and docked in the Philadelphia Naval Yard during his tenure.  However, it is well-established that a lawsuit arising from alleged asbestos exposure while working aboard a Naval ship, whether at sea or at a drydock, is governed by maritime law.  Conner v. Alfa Laval, Inc., 799 F. Supp. 2d 455, 459–60 (E.D. Pa. 2011) (After outlining the locality and connection test, "the Court concludes that the maritime jurisdiction test requires the Court to apply maritime law to those claims involving plaintiffs who were sea-based Navy workers where the allegedly defective product was produced for use on a vessel."); Walker v. Blackmer Pump Co., 367 F. Supp. 3d 360, 375 (E.D. Pa. 2019)  ("[G]iven that the alleged exposure to asbestos occurred on a vessel in navigable waters, and considering that the allegedly defective product was produced for use on a vessel, the Court will apply maritime law.")  Therefore, I shall apply maritime law in resolving Buffalo's present Motion.

To succeed on its asbestos-related products liability claims pursuant to maritime law, a plaintiff must establish causation "by showing (1) that the plaintiff was exposed to the defendant's product and (2) that the product was a substantial factor in causing the plaintiff's injury."  Conner, 842 F. Supp. 2d at 797.  A plaintiff must also show that "the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged." Walker v. Viad Corp., No. 16-215, 2019 WL 653216, at *10 (E.D. Pa. Feb. 14, 2019).  A plaintiff can demonstrate "that a defendant's allegedly defective product was a substantial factor in causing his injury through direct evidence

or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time." Id. (quotations and citations omitted).

However, "a mere minimal exposure to a defendant's product is insufficient to establish causation. . . . Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." Damon v. Aireon Mfg. Corp., No. 14-1954, 2015 WL 9482256, at *1 n.1 (E.D. Pa. Sept. 2, 2015) (quotations and citations omitted). Rather, "the plaintiff must show substantial exposure in order to allow a reasonable inference—based on more than conjecture—that the defendant's product was a substantial factor in causing the plaintiff's injury." Viad Corp., 2019 WL 653216, at *10 (quotations and citations omitted). While "the question of 'substantiality' is one of degree normally best left to the fact–finder, [t]otal failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict products liability." Damon, 2015 WL 9482256, at *1 (quoting Redland Soccer Club, Inc. v. Dep't of Army of United States, 55 F.3d 827, 851 (3d Cir. 1995) and Stark v. Armstrong World Indus., Inc., 21 F. App'x 371, 376 (6th Cir. 2001)).

Here, viewing the evidence in the light most favorable to Plaintiff, the record establishes that while working as a Naval boiler technician aboard the *USS New Jersey* between 1967 and 1969, Nybeck tightened a packing gland on a Buffalo pump at "one time or another." (Def's SOF at 3–4, Ex. A, Nybeck Dep. at 185:21–186:6.) Plaintiff may have also performed work on some Buffalo pump valves. (Id.; Nybeck Dep. at 186:9–14.)

It is true that evidence in the record reflects that "at one time or another" Nybeck was exposed to a Buffalo product. (Def.'s SOF at 3–4.) However, the record is devoid of evidence to establish that Nybeck was exposed to any asbestos-ridden Buffalo product, let alone "substantiality exposed" as required by maritime law. In attempt to defeat summary judgement, Plaintiff points

to the deposition testimony of a Buffalo representative in an unrelated case, various records, and an excerpt by a medical doctor.

First, Plaintiff cites to a portion of a March 15, 2006 deposition transcript of Martin Kevin Kraft, who apparently testified as a Rule 30(b)(6) representative for Buffalo Pumps in a separate lawsuit. (Pl.'s SOF at 2, Ex. E, ECF No. 312-5.) Plaintiff points to these excerpts from Mr. Kraft's testimony to support his claim that asbestos was contained within the Buffalo pumps that were aboard the *USS New Jersey*. As best as I can discern, that case involved a different plaintiff, different defendants, different attorneys, and different law firms. The portion of deposition transcript that Plaintiff has submitted outlines one topic about which Mr. Kraft called to testify: Buffalo's record retention policy between 1950 and 1992. While Mr. Kraft may have been called to discuss other topics, the record before me as it relates to Nybeck's asbestos exposure is unclear.

Setting aside potential issues of the relevance and admissibility of Mr. Kraft's deposition transcript, and assuming the truth of his testimony reflected in Plaintiff's Exhibit E, at best Kraft's testimony establishes that between 1950 and 1992, Buffalo manufactured "closed coupled pumps" with asbestos-gasketing. Even taking these allegations as true, they do not establish Nybeck's proximity, let alone a substantial exposure, to any Buffalo asbestos-containing product during his tenure on the *USS New Jersey*. Damon, 2015 WL 9482256, at *1 n.1 ("a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient.").

Next, Plaintiff cites to myriad of other documents in an attempt to create a genuine issue of fact as to Nybeck's exposure to Buffalo's asbestos-ridden products. These documents include Naval Engineering forms outlining the piping systems on various battleships, Buffalo representatives' deposition excerpts in unrelated lawsuits, assorted excerpts of articles on the history and risks associated with asbestos, and affidavits by Naval officers in unrelated lawsuits.

7

While I must draw all reasonable inferences in favor of Plaintiff, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment." Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014) (citation omitted). Even when viewed together, these documents do not present a genuine issue of fact regarding the particular Buffalo products to which Nybeck was in contact between 1967 through 1969 aboard the *USS New Jersey*, let alone whether asbestos was contained within those products.[4]

In sum, based upon the evidence of record, I conclude that no reasonable jury could determine that Nybeck was exposed to Buffalo asbestos-ridden products such that they were a substantial factor in his development of lung cancer. Therefore, summary judgment in favor of Buffalo is warranted.[5]

## IV.    CONCLUSION

For the reasons set forth above, Buffalo's Motion for Summary Judgment will be granted. An appropriate Order follows.

---

[4] For instance, Plaintiff's Exhibit G contains six assorted pages from a 216-page affidavit of Arthur L., Frank, M.D., Ph.D., dated June 28, 2018. (ECF No. 312-7). In this affidavit, Dr. Frank provides background on his credentials and opines on the general history of asbestos and the health hazards associated with it. Exhibit I contains excerpts from General Electric Company's discovery responses in a 2007 Pennsylvania state court action and Westinghouse Electric Corporation's discovery responses in a 1990 Texas state court action. (ECF No. 312-9.) Plaintiff's Exhibit J contains a document entitled, "Process Specification Making and Attaching Glass-Filled Asbestos Cloth Covering Thermal Insulated Blankets" and various letters addressed to "South Philadelphia Works" from an "Industrial Hygiene Engineer," all of which generally describe the dangers associated with inhaling asbestos fibers. (ECF No. 312-10.) Exhibit K is a two-page document, entitled a "Safe Practice Data Sheet A-20," which generally describes asbestos and the risks associated with it. (ECF No. 311-11.)

[5] Because I conclude that Buffalo is entitled to summary judgment on all claims, I need not consider the parties' arguments on the applicability of the government contractor defense.