IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (No. VI) | CONSOLIDATED UNDER MDL DOCKET NO. 01-875 |
| BARBARA MANN, *Personal Representative of the Estate of Richard Nybeck*, | |
| *Plaintiff,* | CIVIL ACTION |
| v. | NO. 17-4428 |
| A.O. SMITH CORP., *et al.*, | |
| *Defendants.* | |

**Goldberg, J.**                                                                                                                   **June 15, 2021**

## MEMORANDUM OPINION

Richard Nybeck originally filed this personal injury action against multiple defendants, asserting claims for alleged harmful, occupational exposure to asbestos and his development of lung cancer. After Nybeck's unfortunate passing in June 2020, Barbara Mann, as the personal representative of Nybeck's estate, ("Plaintiff") was substituted as plaintiff. The allegations against Defendant, Ford Motor Company ("Ford") stem from Nybeck's work during high school at his father's gas station in Michigan.

Presently before me is Ford's Motion for Summary Judgment on all claims.[1] For the reasons set forth below, I will grant the Motion.

---

[1] Plaintiff's claims against Ford are for negligence (Count One), strict liability (Count Two), conspiracy (Count Three), and breach of warranty (Count Four).

1

I.   **STATEMENT OF FACTS**

Unless otherwise indicated, the facts presented below are undisputed.[2]

Nybeck grew up and lived in Michigan until he graduated from high school. (Def.'s SOF at 1, ECF No. 299.) Between 1954 and 1957, while in high school, he worked part-time at his father's gas station in Michigan. (Id. at 1–2.)[3] In this role, Nybeck performed limited services on cars, including pumping gas, changing oil, changing tires, and replacing fan belts. (Id. at 2.)

Nybeck sometimes observed his father performing mechanical work, including changing clutches on cars. (Id.) Nybeck would visit a Ford dealership to pick up replacement clutches and brakes that his father needed. (Id.) Nybeck never personally changed the brakes on a vehicle but observed his father's work, would help his father by cleaning the brake drums, and handed his father the new brakes. (Id.)

Nybeck was diagnosed with lung cancer in November 2016 and passed away on June 17, 2020. (ECF No. 331.)

II.  **STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if there is a sufficient evidentiary basis on

---

[2] Ford's Statement of Facts, which will be cited as "Def.'s SOF," were not presented in distinct, numbered paragraphs. (ECF No. 299.) In response, Plaintiff submitted a "Counterstatement of Disputed Facts." (ECF No. 216 at 2.) I will only consider the facts set forth in the parties' briefs that have proper citations to the record. See Fed. R. Civ. P. 56(c)(1)(A); Malik v. Hannah, 799 F. Supp. 2d 355, 358 (D.N.J. 2011) (A party's expression of general disagreement "without identifying the facts disputed and without [citing] to evidence in the record that raises an issue of fact regarding that point, is insufficient to survive summary judgment.").

[3] Nybeck later testified that during a break in his military service in the late 1960s, he returned home for three months and again helped his father at the gas station. (Pl.'s Mem. of Law at 3, ECF No. 316.) However, there is no evidence proffered to establish Nybeck's proximity to any Ford products during that time.

which a reasonable factfinder could return a verdict for the non-moving party, and a factual dispute is "material" if it might affect the outcome of the case under governing law. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the non-moving party. Galena v. Leone, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. Schaar v. Lehigh Valley Health Servs., Inc., 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 461 (3d Cir. 1989)).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." Id. at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A).

### III.  DISCUSSION

Ford seeks summary judgment on Plaintiff's claims of negligence, strict liability, conspiracy, and breach of warranty.  Ford contends that the negligence and breach of warranty claims fail because Plaintiff's evidence is insufficient to establish that Ford knew or should have known that there was any danger associated with the use of Ford brakes and clutches between 1954 and 1957.  Ford also maintains that the strict liability and conspiracy claims also fail for a lack of legal and factual support.  Plaintiff responds that questions of fact preclude summary judgment.

With regard to the applicable substantive law, Ford asserts that Michigan law applies. Plaintiff responds that Pennsylvania law applies.[4]  When a federal court is sitting in diversity, the choice of law rules of the forum state—in this case, Pennsylvania—apply.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  Pennsylvania applies a "flexible rule which permits analysis of the policies and interests underlying the particular issue before the court" and directs courts to apply the law of the state with the "most interest in the problem." Hammersmith v. TIG Ins. Co., 480 F.3d 220, 227 (3d Cir. 2007) (quoting Griffith v. United Air Lines, Inc., 203 A.2d 796, 805–06 (Pa. 1964)).

Here, the alleged asbestos exposures occurred exclusively in Michigan and while Plaintiff was residing in Michigan.  Michigan has the greatest interest in having its own law apply to protect its citizens for alleged exposures that occurred within its borders.  Normann v. Johns-Manville Corp., 593 A.2d 890, 894 (Pa. Super. 1991) (applying the state law from the state in which the plaintiff resided and in which all asbestos exposure occurred); Kilgore v. Allen-Bradley Co., No. 13-04029, 2014 WL 7647794, at *1 (E.D. Pa. Nov. 10, 2014) (same).  Therefore, I will apply

---

[4]  Plaintiff did not brief the choice of law issue and first introduced this argument during oral argument.

4

Michigan law.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); see also Guaranty Trust Co. v. York, 326 U.S. 99, 108 (1945).

As for Plaintiff's negligent failure to warn and breach of warranty claims, the elements of proof for each are the same under Michigan law.  Spencer v. Ford Motor Co., 367 N.W.2d 393, 396 (Mich. App. 1985) ("Negligence and breach of implied warranty claims based on a failure to warn involve proof of the same elements.") (citing Smith v. E.R. Squibb & Sons, Inc., 273 N.W.2d 476 (Mich. 1979)).  Specifically, a plaintiff in a products liability action must establish that "(1) the defendant owed the plaintiff a duty to warn of the danger, (2) the defendant breached that duty, (3) the defendant's breach was the proximate and actual cause of the plaintiff's injury, and (4) the plaintiff suffered damages as a result."  Mitchell v. Taser Int'l, Inc., No. 09-11480, 2014 WL 3611632, at *1 (E.D. Mich. July 23, 2014), aff'd, 803 F.3d 223 (6th Cir. 2015) (citing Tasca v. GTE Prods. Corp., 438 N.W.2d 625 , 627 (Mich. App. 1988)).

A manufacturer is not liable for an alleged failure to warn "unless the plaintiff proves that the manufacturer knew or should have known about the risk of harm based on the scientific, technical, or medical information reasonably available at the time the specific unit of the product left the control of the manufacturer."  Mich. Comp. Laws § 600.2948(3); see also Glittenberg v. Doughboy Recreational Indus., 491 N.W.2d 208, 212–213 (Mich. 1992) (in order for a duty to warn to arise, the manufacturer must have "actual or constructive knowledge of the claimed danger").  "[T]he plaintiff must show that a manufacturer knew or should have known its product posed the *particular* risk at issue in the case."  Mitchell v. City of Warren, 803 F.3d 223, 230 (6th Cir. 2015) (emphasis in original).  For example, a "manufacturer's knowledge that exposure to a chemical damages the liver. . . does not prove that it should have known exposure causes cancer."  Id.; Perlmutter v. U.S. Gypsum Co., 4 F.3d 864, 869–70 (10th Cir. 1993) (knowledge that some

types of asbestos-exposure cause lung damage does not prove knowledge that all types of asbestos-exposure did). "A company does not have a duty to warn of all theoretically possible dangers." City of Warren, 803 F.3d at 231.

Ford contends that Plaintiff's negligent failure to warn and breach of warranty claims fail because no evidence in the record establishes that Ford knew or should have known about dangers associated with asbestos in its brake and clutch products between 1954 and 1957, when Nybeck was allegedly exposed. Plaintiff responds by pointing to Ford's membership in a professional organization, the National Safety Council, which Plaintiff claims creates an issue of fact as to whether Ford knew or should have known of the risks of asbestos during that time. Without specific citations, Plaintiff generally points to nearly 200-pages of assorted documents, records, and communications between entities purportedly involved in this organization and states that because Ford joined this organization in 1947, "whatever anyone [sic] of them knew Ford knew." (Pl.'s Opp. at 4, ECF No. 316.)

However, none of the documents create a genuine issue of material fact for purposes of a Rule 56 review. These mostly undated documents include Ford's discovery responses in unrelated state court cases, excerpts from various entities' studies on the effects of asbestos, medical journal descriptions of asbestosis and lung cancer, an internet article on the history of Henry Ford's relationship with Harvey Firestone, partially illegible and indiscernible notes by unknown authors about asbestos dust, and other assorted excerpts on asbestos, generally.[5] Plaintiff also attaches

---

[5] For instance, Plaintiff's Exhibit L contains an article entitled "Fume and Dust Exposure," which appears to have been published in 1948. (ECF No 316-12.) While the article acknowledges that "[a]sbestos used in the formulation of brake linings is a potentially harmful compound," (Ex. L at 79), such statement is mere speculation and does not address lung cancer. City of Warren, 803 F.3d at 230 ("A jury needs some evidence showing that the product in question causes the harm at issue.") Plaintiff's Exhibit I is similarly speculative. (ECF No. 316-9.) This document is a National Safety Council record, dated 1932, which states that the "role of asbestos as an excitant of tuberculosis infection is not as clear cut as that of pure

assorted pages from an affidavit of Arthur L., Frank, M.D., Ph.D., dated June 28, 2018. (ECF No. 316-6). In this report, Dr. Frank provides background on his credentials and opines on the general history of asbestos and the health hazards associated with it.[6]

None of these documents reflect that Ford was either an author or recipient. Nor do these documents establish what Ford knew or should have known between 1954 and 1957 about the dangers of exposure to its brake and clutch products, allegedly containing asbestos, let alone that or if such exposure could lead to lung cancer. While I must draw all reasonable inferences in favor of Plaintiff, "an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment." Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014) (citation omitted). No evidence of record supports the conclusion that exposure to Ford's brake or clutch products, between 1954 and 1957, would cause lung cancer and eventual death. Accordingly, no issue of fact remains on the negligent failure to warn and breach of warranty claims.

Ford also argues that the strict liability claim fails because such claims are not recognized pursuant to Michigan law. Plaintiff does not respond on this point. Because "strict liability is not available under Michigan law," Beaver v. Howard Miller Clock Co., 852 F. Supp. 631, 639 (W.D. Mich. 1994) (citing Prentis v. Yale Mfg. Co., 365 N.W.2d 176, 186 (Mich. 1984)), Ford is entitled to summary judgment on this claim.

Finally, Ford contends that the conspiracy claim fails because there is no factual support to establish that Ford engaged in an underlying unlawful act or attempt. Plaintiff responds that Ford's

---

silica. While there are numerous reports of death in asbestos due to a terminal tuberculosis, nevertheless surveys of living-workers have failed to demonstrate any excess of such infection." (Ex. I at 51.)

[6] Plaintiff has provided only six of the 216-page affidavit. In any event, this affidavit does not mention Ford or any Ford products.

participation in the National Safety Council is sufficient to create a genuine issue of fact as to Ford's knowledge of the harmful effects of asbestos and use of it in its products.

To establish a civil conspiracy claim pursuant to Michigan law, a plaintiff must show "a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." Swain v. Morse, 957 N.W.2d 396, 409 (Mich. App. 2020) (citing Admiral Ins. Co. v. Columbia Cas. Ins. Co., 486 N.W.2d 351, 358 (Mich. App. 1992)). "Liability does not arise from a civil conspiracy alone; 'rather, it is necessary to prove a separate, actionable tort.'" Id. n. 13 (quoting Advocacy Org. for Patient. & Providers v. Auto Club Ins. Ass'n, 670 N.W.2d 569, 385 (Mich. App. 2003)).

There is insufficient evidence in the record to support the civil conspiracy claim. Ford's participation in the National Safety Council, alone, cannot and does not substantiate this claim. "Attendance at a meeting of an organization does not necessarily signify approval of *any* of that organization's activities. And, even if the attendance at issue [] could reasonably be interpreted as an expression of general approval of the [professional organization]'s goals, it unquestionably could not rationally be viewed as sufficient to show that [a defendant entity] specifically intended to further any allegedly tortious and constitutionally unprotected activities committed by the [professional organization] or its other members." In re Asbestos Sch. Litig., 46 F.3d 1284, 1290 (3d Cir. 1994); In re Welding Fume Prod. Liab. Litig., 526 F. Supp. 2d 775, 805 (N.D. Ohio 2007) ("circumstances that are just as consistent with a lawful purpose as with an unlawful undertaking are insufficient to establish a conspiracy, and it is certainly lawful to associate with other industry participants in trade organizations."). Accordingly, no reasonable jury could conclude that Ford's participation in the National Safety Council constitutes a civil conspiracy. Ford is entitled to summary judgment on this claim.

As such, I conclude that summary judgment in favor of Ford is warranted on all claims.

## IV. CONCLUSION

For the reasons set forth above, Ford's motion for summary judgment will be granted. An appropriate Order follows.